IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:21-cv-111

| | |
|---|---|
| AMBER GAIL COX WHITLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JON WESLEY THOMPSON, M.D., )<br>)<br>Defendant. )<br>)<br>_____ ) | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

The Plaintiff, AMBER GAIL COX WHITLEY, being duly sworn, deposes and says the following:

## I.
## NATURE OF ACTION

This civil action arises from violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* (hereinafter referred to as the "ECPA") and state law. Plaintiff alleges that the Defendant, Jon Wesley Thompson, M.D., made unwelcomed sexual advances toward her and attempted to blackmail her in exchange for sex. On June 11, 2021, Defendant told Plaintiff that he had audio- and video-recordings he had taken of her private and confidential activities. Defendant made these recordings without Plaintiff's knowledge or consent. Defendant demanded that Plaintiff engage in sexual activities with him twice a month for one year and that if she declined, he would release the audio- and video-recordings to her husband and other family members and through other means. Plaintiff now seeks appropriate injunctive, equitable, and monetary relief, in the form of actual damages, compensatory damages for emotional

1

distress, and punitive damages against Defendant, as well as such other relief to which she is entitled as a consequence of Defendant's abusive and predatory misconduct.

## II.
## JURISDICTIONAL STATEMENT& PARTIES

1. Plaintiff is an adult citizen and resident of Wilkes County, North Carolina. At all times relevant to this Complaint, Plaintiff was and is currently employed by Wake Forest Baptist Health Network and its affiliate, Wilkes Medical Center, as a licensed Nurse Practitioner.

2. The Defendant, Jon Wesley Thompson, M.D., is an adult citizen and resident of Wilkes County, North Carolina. At all times relevant to this Complaint, Defendant was a physician employed by Wake Forest Baptist Health and its affiliate, Wilkes Medical Center, and was Plaintiff's immediate supervisor. Defendant was also Plaintiff's physician.

3. This Court has jurisdiction over the parties and the subject matter of this Complaint. Venue in the U.S. District Court for the Western District of North Carolina is proper.

4. All procedural prerequisites to the institution of this action have been fulfilled.

## III.
## STATEMENT OF FACTS

5. Plaintiff received her masters degree in nursing from Winston-Salem State University School of Nursing in 2011. She is licensed by the State of North Carolina as a Nurse Practitioner and is board certified by the American Academy of Nurse Practitioners.

6. In or about August of 2011 Plaintiff was hired by Carolina's Healthcare System to work as a Nurse Practitioner at its Wilkes Regional Medical Center, located in North Wilkesboro, North Carolina. Subsequently, in or about 2017, Wake Forest Baptist Health assumed management of the Wilkes County Medical Center and became Plaintiff's employer.

7. While employed by Wake Forest Baptist Health and its predecessor, Plaintiff has been required to work under the direct supervision of a physician who is licensed by the North Carolina Medical Board. She is required by the North Carolina State Nursing Board to enter into a collaborative practice agreement with a supervising physician in order to practice as a Nurse Practitioner in this state.

8. In or about May 2017 Plaintiff entered into a collaborative practice agreement with Defendant. Defendant acted as Plaintiff's supervising physician while they were both employed by Wake Forest Baptist Health Network until June 18, 2021.

9. While Defendant was Plaintiff's supervisor, Plaintiff maintained a professional and amicable relationship with Defendant. While Plaintiff, as well as her family, developed a social relationship with Defendant and his wife and family over time, the relationship between Plaintiff and Defendant at all times until June 11, 2021 remained strictly Platonic.

10. Defendant is a well-known figure in Wilkes County. He is and/or was the only general surgeon in Wilkes County and served as a Regional Medical Director with Wake Forest Baptist Health. Based upon information and belief, he is a Fellow of the American College of Surgeons and is board-certified by the American Board of Surgery. Based upon information and belief, Defendant is a 2001 graduate of the University of Texas Medical School at San Antonio and has over 20 years of experience in the medical field.

11. On May 17, 2021, Defendant told Plaintiff while at work that he was having marital problems and alleged that he knew that Plaintiff was having issues in her own marriage. Defendant then stated that he found Plaintiff attractive and stated that he was interested in having a relationship with her outside of work. Defendant further asked Plaintiff whether his request made her uncomfortable to which Plaintiff replied, "yes." Defendant then offered an apology to Plaintiff.

12. Based upon her previous work experience with Defendant, Plaintiff believed that Defendant's comment was isolated and that perhaps she had misinterpreted or misunderstood what Defendant said about having a relationship with her outside of work. Prior to June 11, 2021, for instance, Defendant was Plaintiff's physician. During March, 2020, Defendant surgically removed her gallbladder. In late November, 2020, Defendant was present and attended her carpal tunnel release surgery. In December, 2020, Defendant performed a breast examination of Plaintiff which was monitored by another nurse and ordered diagnostic imaging accordingly.

13. On June 11, 2021, Defendant requested to speak with Plaintiff in his truck. Plaintiff complied with Defendant's request as it was not uncommon for them to ride together between the hospital and their respective offices. Once inside his truck, Defendant stated that the had some audio- and video-recordings of Plaintiff that contained highly personal, confidential, and potentially damaging information about her. Defendant advised Plaintiff that the recordings were stored on his cell phone and that he had copies in other places. Defendant further advised Plaintiff that there were devices one could buy which could capture conversations by simply pointing the device at the conversation one wanted to record. Defendant also stated that there were cameras and other devices that could see through tinted glass.

14. While in Defendant's truck on June 11, 2021, Defendant attempted to play an audio-recording of Plaintiff's conversation with a third party that was stored on a non-work cell phone. Defendant, however, stated that he was unable to play it for her because his hearing aids were connected by blue-tooth to his cell phone and interfered with his attempt to play the recording for her. Plaintiff, nonetheless, believed and continues to believe that Defendant had, in fact, recorded her private communications.

15. Defendant told Plaintiff on June 11, 2021 that he would not disclose said recordings provided she agreed to have "physical alone time" with him for one hour, twice a month, for one year. Defendant also told her several times that he found her attractive. Plaintiff interpreted Defendant's request for "physical alone time" as a request for sexual intercourse with him.

16. During the June 11, 2021 conversation, Defendant told Plaintiff that he would help her obtain bigger bonuses from their employer, Wake Forest Baptist Health, and that their professional work relationship would not change because he knew she could "compartmentalize" the sexual relationship he demanded from her. While they were in Defendant's truck, Defendant stated that he wanted to begin a sexual relationship with her that day, that they had time to go have "some fun" in his apartment inasmuch as they did not have surgery scheduled for the remainder of that day.

17. In response, Plaintiff stated she needed time to think about Defendant's demand. Defendant agreed to provide Plaintiff until Monday June 14, 2021 to make her decision, and stated that if she refused, he would send the audio- and video-recordings to her husband and other members of her family. Defendant further stated that if Plaintiff did not agree to his proposal, her refusal would change her situation at work and he further implied that Plaintiff might lose her job. Defendant added he was not worried about his job because as a surgeon he could pack up and go to work anywhere.

18. Plaintiff told Defendant at the conclusion of their June 11, 2021 conversation that Defendant's demand was "blackmail." Defendant replied that he did not see it that way.

19. On Monday, June 14, 2021, Plaintiff responded to Defendant's proposal with more questions regarding what he wanted her to do and wanted assurances that she would be released from complying with his demands for sex after one year. During the course of their conversation,

5

Case 5:21-cv-00111-KDB-DCK   Document 1   Filed 07/21/21   Page 5 of 12

Defendant reiterated that he had experienced marital difficulties with his wife and that he wanted a sexual physical relationship with Plaintiff for one hour, two days per month for one year. Defendant also played for Plaintiff a clip of an audio-recording that was stored on his non-work cell phone as proof to substantiate his claim that he had in fact recorded Plaintiff's private communications. The clip of the audio-recording contained a confidential conversation Plaintiff had had with a third party. Defendant advised that he might release Plaintiff from his proposed sexual arrangement if he wanted to do so after one year. Plaintiff stated that she needed more time to think about Defendant's demand.

20. During the course of the June 14, 2021 conversation Defendant was suspicious that Plaintiff might attempt to record their discussion and placed his hands on her waist in an aggressive manner without her consent. Plaintiff told Defendant, "Don't touch me" and was fearful that Defendant might harm her.

21. The recording of Plaintiff's conversation with a third party that Defendant disclosed to her on June 14, 2021 was confidential. Neither Plaintiff nor the party to whom she was speaking consented to being recorded by Defendant. Plaintiff had every expectation that her conversation with the third party was and would remain private.

22. On June 15, 2021, Plaintiff's husband accompanied Plaintiff to a previously scheduled medical procedure at Wilkes Medical Center. While waiting for Plaintiff, Defendant approached Plaintiff's husband and asked him for his contact information, including his email address. Later that day, Defendant texted his personal cell phone number to Plaintiff's husband. Defendant also sent a friend request via FaceBook to her grand-father and husband.

23. On June 16, 2021, Plaintiff met with Wake Forest Baptist Health Senior Employee Relations Consultant, Catherine McMath, and Chief Medical Director, Elisabeth Stambaugh,

M.D., and lodged a complaint of workplace sexual harassment against Defendant. During the course of her discussion with Ms. McMath and Dr. Stambaugh, Plaintiff provided a detailed account of Defendant's plan to blackmail and extort her in exchange for sex, as well as other corroborative evidence.

24. On June 18, 2021, Wake Forest Baptist Health terminated Defendant's employment based upon Defendant's admission that Plaintiff's sexual harassment complaint about him is true.

25. Defendant's conduct toward Plaintiff was predatory and was intended to sexually exploit and abuse her, and to place her in fear for her personal well-being and safety and in fear for the well-being and safety of her immediate family.

26. Due to the outrageous and predatory nature of Defendant's conduct in attempting to blackmail and extort Plaintiff in exchange for sex, Defendant has, in fact, placed Plaintiff in extreme fear for her personal well-being and safety, and in fear for the well-being and safety of her immediate family members. Additionally, Defendant has caused Plaintiff to suffer severe emotional distress in the form of sleeplessness, anxiety, depression, embarrassment, and shame, for which she has sought and is currently seeking psychological counseling.

## FIRST CLAIM FOR RELIEF
**(Violation of ECPA, 18 U.S.C. § 2510, *et seq*.)**

27. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 26 of this Complaint.

28. Title I of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2523 ("The Wiretap Act"), prohibits the intentional interception of any individual's wire, oral, or electronic communications. The term, "interception" under the ECPA means the "aural or other acquisition

7

Case 5:21-cv-00111-KDB-DCK   Document 1   Filed 07/21/21   Page 7 of 12

of the contents of any wire, electronic, or oral communication by using any electronic device, mechanical device, or other device." 18 U.S.C. § 2510(5).

29. Defendant willfully and purposely sought to intercept and did intercept the content of Plaintiff's oral communications with a third party by the use of a mechanical, electronic, or other device for the purpose of using the content of such communications to blackmail and otherwise induce Plaintiff to engage in sexual intercourse with him against her will.

30. Plaintiff's communications with the third party were private and confidential and Plaintiff expected said communications to be private and confidential. Neither Plaintiff nor the third party were aware of Defendant's activities at the time he recorded their communications and neither consented to Defendant's interception or threatened use of their private communications.

31. As a direct and proximate result of Defendant's acts, Plaintiff suffers, and continues to suffer emotional injury in the form of sleeplessness, anxiety, depression, humiliation, and embarrassment. Accordingly, Plaintiff is entitled to have recover of Defendant actual and compensatory damages in an amount to be proved at trial in excess of $75,000.00.

32. Defendant's actions toward Plaintiff were willful and intentional and were undertaken with malice and/or a reckless indifference to Plaintiff's federally protected rights. As such, Plaintiff is entitled to have and recover of Defendant punitive damages as provided by 18 U.S.C. § 2707(c).

## SECOND CLAIM FOR RELIEF
**(Invasion of Privacy)**

33. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 32 of this Complaint.

34. Defendant intentionally and willfully intruded upon the privacy of the Plaintiff by recording her personal and private communications with a third party without her knowledge or consent. Plaintiff had every reasonable expectation of privacy in her communications.

35. Defendant's actions toward Plaintiff, including the use of such private recordings to blackmail her for sex, were highly offensive to her as it would be to any reasonable person in the same or similar circumstances.

36. As a direct and proximate result of Defendant's acts, Plaintiff suffers, and continues to suffer emotional injury in the form of sleeplessness, anxiety, depression, humiliation, and embarrassment. Accordingly, Plaintiff is entitled to have recover of Defendant actual and compensatory damages in an amount to be proved at trial in excess of $75,000.00.

37. Defendant's actions toward Plaintiff were willful and intentional. As such, Plaintiff is entitled to have and recover of Defendant punitive damages as provided by state law.

### THIRD CLAIM FOR RELIEF
### (Civil Sexual Assault & Battery)

38. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 37 of this Complaint.

39. Defendant willfully and intentionally stalked Plaintiff. Defendant admitted to Plaintiff that he had been following her. Defendant's actions placed Plaintiff in fear of an imminent sexual assault against her will for the purpose of his own sexual arousal and/or to sexually abuse Plaintiff. Additionally, on June 14, 2021, Defendant aggressively placed his hands on Plaintiff's waist against her will and without her consent and placed her in fear of an imminent physical assault against her person.

40. Defendant's actions constitute a sexual assault and battery.

41. As a direct and proximate result of Defendant's acts, Plaintiff suffers, and continues to suffer emotional injury in the form of sleeplessness, anxiety, depression, humiliation, and embarrassment. Accordingly, Plaintiff is entitled to have recover of Defendant actual and compensatory damages in an amount to be proved at trial in excess of $75,000.00.

42. Defendant's actions toward Plaintiff were willful and intentional. As such, Plaintiff is entitled to have and recover of Defendant punitive damages as provided by state law.

### FOURTH CLAIM FOR RELIEF
**(Intentional Infliction of Emotional Distress)**

43. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 42 of this Complaint.

44. Defendant intentionally placed Plaintiff in extreme fear for her personal well-being and safety, in fear for the well-being and safety of her immediate family members and her livelihood. Additionally, Defendant has caused Plaintiff to suffer severe emotional distress for which she has sought and is currently seeking psychological counseling.

45. The actions of the Defendant were extreme and outrageous and were intended to sexually victimize Plaintiff by forcing her into an unwanted sexual relationship through the use of blackmail/extortion.

46. As a direct and proximate result of Defendant's acts, Plaintiff suffers, and continues to suffer emotional injury in the form of sleeplessness, anxiety, depression, humiliation, and embarrassment. Accordingly, Plaintiff is entitled to have recover of Defendant actual and compensatory damages in an amount to be proved at trial in excess of $75,000.00.

47. Defendant's actions toward Plaintiff were willful and intentional. As such, Plaintiff is entitled to have and recover of Defendant punitive damages as provided by state law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court to:

A. Enter a judgment in her favor and grant a permanent injunction enjoining Defendant from engaging in any public or private use of her personal or confidential communications or information in any form.

B. Order the Defendant to make the Plaintiff whole by providing her with equitable relief and monetary damages in amounts to be proved at trial to compensate her for her actual damages and for her emotional distress, anxiety, and humiliation caused by the acts of the Defendant.

C. Order Defendant to pay to Plaintiff punitive damages in amounts to be proved at trial for his willful and intentional abuse and sexual victimization of the Plaintiff as provided by federal and state law.

D. Award Plaintiff her reasonable costs and attorney's fees incurred in this action as provided by federal and state law.

E. Grant such further and different relief to the Plaintiff as the Court deems necessary and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial regarding the matters alleged herein.

This the 21st day of July, 2021.

/s/Jenny L. Sharpe
Jenny L. Sharpe, Esq.
Attorney for Plaintiff
N.C. State Bar No. 13698

**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC  28277
Telephone: (704) 944-3272
Facsimile:  (704) 944-3201
Email: sharpeattorney@gmail.com